Intervening case law and conceded error require this court reverse and remand. First, Valdivia-Flores requires remand for the sentencing error at the very least, but it also means that the error occurred during the prior deportation. The court should remand for the judge to apply the correct standards. Second, the government's concession of Rule 704 error requires the court to reverse and remand for the sentencing error at the very least. The court also demands reversal since it fails to show the evidence was anything but close in a case hinging ultimately on dueling experts. Now, the simplest matter is the sentencing error where the court applied a plus 8 for an aggravated felony. Under Valdivia-Flores, the Washington prior was not an aggravated felony. Therefore, it was at most a plus 4. That's a 20-month swing in the upper end of the guideline. If we agreed with you on this one, we would just send it back for resentencing? That's correct, Your Honor. The court should at least apply the correct guidelines calculation plus 4. Didn't Judge Burns decide this one in the alternative? Well, he said that he would, as Judge Burns frequently does, as he did in Munoz-Camarena, he calculated it with plus 8, plus 4. It wasn't pretty explicit. It runs on about a page or so where he recognizes that this is a possibility, but he flatly, it's not offhand is it, he says this guy has this degree of past dangerousness and why I believe that even if I took the alternative that the guidelines were this, which are now the right guidelines according to you, I would give this sentence. I've seen lots of cases where it's ambiguous, but this is pretty straightforward Dalton suspenders, isn't it? Well, Your Honor, the very most that Judge Burns said at the time when he made that comment was he said, well, he came back within six months. Well, we see people coming back a lot quicker than six months, and I don't know that coming back in six months would give you the justification under Cardi and under Gall for a 20-month upward variance. That's a very large upward variance for simply coming back. Six months actually could be. That's not the only thing that he says, is it? He talks about the robberies are troublesome and what happened under troublesome, and that's before. Then he says, alternatively, let me assume, and I would find given the three robberies, elements of attacking his spammers, I am convinced he's a dangerous guy. And then he keeps talking, so he's not relying just on his coming back. Well, Your Honor, I would disagree that those were valid reasons for an upward variance from the guideline range with the plus four, because after all, his criminal history is already taken into account in his criminal history category. So now we're starting to get into an area of double counting. Counsel, I just want to make sure you understand you've shifted your argument. You may have done so wisely, but you've shifted it from telling us that it had to go back for resentencing to saying the judge has committed error, so there's no reason to go back for sentencing because the only thing he can do is sentence him on the plus four. If this goes back and we just say, take another look at this, Judge Burns is going to come back and say exactly what he just said and give him the plus eight. Your Honor, I'm not quite so confident he would, because we understand that, as the Supreme Court said in Molina-Martinez, it's very important to not only calculate the guidelines as the initial, but as the lodestar. I would like to go back and have the opportunity for Judge Burns to consider seriously that it is indeed a plus four and not a plus eight, and that he has to consider and justify under Cardi. Cardi says you must justify an upward variance, that he says more and makes a better record for why a 20-month, that's a 67% upward variance, or sorry, a 50% upward variance from the low end. That's a very large upward variance for him to say simply things that he was also using for why he gave the high end at 57 months. Some of his reasoning goes to both of those. And I would point out that this is something that we saw in Munoz-Camarena, and one of the reasons why the court there thought it had to go back, where you can't simply appeal proof something by saying, well, no matter what I did, whatever guidelines error I commit, I would still give this particular sentence. We have to have it go back so that he can apply the correct guidelines under Molina-Martinez, under Cardi, under Gall, and then calculate then and explain adequately on the record why a 20-month upward variance is the correct sentence. Your Honor, I would like to also take some time to talk about the same error under Valdivia-Flores, indicates that there was an error at the prior deportation, but the court applied the wrong standards for the prejudice prong of the motion to dismiss, because it accumulated the factors from two different forms of relief, only one of them being relevant to this case. So that is a mistake at the very first stage of Hinkson in abuse of discretion. Could you help me with a step before that? Because I think you're talking about the plausibility of his obtaining the relief he wanted, right? Yes, correct. I just can't get past Vidal-Mendoza, so maybe help me see why you're able to surmount that obstacle. Your Honor, I think there's a very simple answer to that. It's simply because the Supreme Court has said over and over and over again that DeCamp and Mathis changed nothing. All they're doing is clarifying the proper way of, as the court said in DeCamp, the way we've always done it. Well, that's not the way we had done it, that's for sure, right? We had done things in our circuit quite differently, and that's what we were somewhat scolded for in DeCamps. Well, that's true, but when you look at the history in the Ninth Circuit even, the most recent case, it was slightly after the 2006 deportation hearing here, but it's in that window of Navarro-Lopez. Navarro-Lopez was decided in 2007. That's where the court said that when you have a missing element, you simply don't go to the modified categorical analysis. And when Navarro-Lopez said that, it cited case law from even earlier, from 2004. It cited Lee v. Ashcroft, Judge Kaczynski's concurrence there, which is supposed to indicate that if even at the time the Ninth Circuit recognized. But, of course, we're not concerned with what the Ninth Circuit. Well, no, I'm sorry. I mean, my problem is that there is no way any rational I.J. in 2006 was this, could possibly have predicted Valdivia Flores. I think Valdivia Flores is crazy today, right? So the thought that somehow an I.J. was supposed to anticipate that that's where we were going to end up I think is just not credible. No, Your Honor, I'm not asking that the I.J. had to anticipate anything. What the Supreme Court has said is this has always been the way we apply the categorical analysis. That means it was true in 2006 as it is today in 2018. The Supreme Court says so. We have to take what the Supreme Court says. What I have to take from that is there is no case law saying whether the accomplice, Washington accomplice, was categorical or not in 2006. If the immigration judge in 2006 did a proper categorical analysis, we must assume he would have come out with the same answer as Valdivia Flores. I don't think Valdivia Flores is correct today under the categorical approach, okay? So I'm saying if I met an I.J. in 2006, there is no way I look at this and say this doesn't count as an aggravated felony. And I don't think you can say that any I.J. could have been expected to anticipate where we have ended up today. Because where we are today is insane, okay? It just makes no sense whatsoever. I think even you would eventually agree with that, that we're not in a rational place. And so the thought that we're going to tag I.J.s with error back in 2006 for not anticipating this, that just doesn't make any sense to me. Your Honor, I respectfully disagree. I'm not going to say that everything that I argued in my opening brief was insane and irrational. And this Court, however much we disagree with it, this Court is bound by Valdivia Flores. What do we do with Paniagua? Your Honor, I understand that the Court is looking at an unpublished memorandum. But it's from the same panel that decided Valdivia Flores. Well, Your Honor. And they said we're not going to apply this retroactively. Your Honor, I respectfully disagree with the memorandum. The memorandum, of course, isn't binding on this Court. I think it's really clear that under Valdivia Flores that the law, as even Judge Byrne recognized, the critical legal point was under DeCamp and Mathis. And Judge Byrne said, well, that's something that happened long after 2006. But that's not correct. In both DeCamp and Mathis, the Supreme Court stressed, as they said, we have a stressed over and over again. Sure. That just goes to how we apply the modified categorical approach. Correct. But Valdivia is taking a huge step in finding that no one convicted of a felony in Washington can have it count against them because of the possibility that there was accomplice liability. Your Honor, I don't think that we can sit here and assume that the immigration judge in 2006, if he had applied the categorical analysis correctly, as we understand, as it was always understood to be, if he had applied the categorical analysis correctly in 2006, we have to assume he would come to the same result as Valdivia Flores. Is there anything in this record that suggests that Mr. Villasenor was convicted under an accomplice liability theory? That's not necessary, Your Honor, because as Valdivia Flores points out, and as I argued in my brief, Washington law indicates that the overbroad accomplice liability is inherent in every criminal prosecution. And that's why it applies here. Do you have to have at least two people involved in a crime in order to get it or not? No, Your Honor. As far as I understand Washington law, Washington law is clear that you don't have to be charged as accomplice. You can be charged as a principal. My question is a little different. Does there have to be evidence that there were at least two people involved to even have this error count? I can't say that. I'm not quite sure that it's true, Your Honor, because, I mean, the cases that I've looked at, it happens in any case. It doesn't matter here because if we look at the record, we take kind of a tiny peek at the record here, we can see that in both of these cases it was a co-defendant. But that's just the point, is that it's inherent in every prosecution. Therefore, this case, whatever is true, whatever the pinagua says about other cases or whether it applies to every criminal, we don't know. There's all sorts of strange things. I take the California joyriding statute, for instance. Now, we know that's not categorical because it has, unusually, it has accessory built into the definition. Now, that's clearly unusual. California law doesn't do that anywhere. I don't know why the legislature decided to do that. So I can't say. I'm not an expert on Washington law. But it could be that there are plenty of Washington statutes where Valdivia Flores doesn't apply.  Because if it is inherent in every robbery prosecution and it's indivisible, as Valdivia Flores says, I would have to say that under the proper categorical analysis, it's unavoidable that this is overbroad as an aggravated felony. Counsel, you've exceeded your time. We took you well over. I'm going to give you some time for rebuttal. Okay. Thank you very much, Your Honor. Mr. Zip. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, this case is controlled by Vidal-Mendoza. At the time the defendant was deported from the United States in 2006, the case law in this circuit was clear that Washington robbery was a theft offense, aggravated felony. This Court had never held that the aiding and abetting statute in Washington rendered it overbroad. And moreover, this Court had made it clear that the Court could resort to a modified categorical analysis, even in cases like this that have now been determined to be indivisible. At the time of the defendant's deportation, the immigration judge had before it the conviction documents from the Washington robbery. I submitted them to the Court for judicial notice. And those documents indicate that the defendant was charged only by himself and that in a written plea agreement, the defendant admitted that I wrongfully took property by force from another. I was armed with a knife. So there was no suggestion at any point that aiding and abetting or accomplice liability was ever an issue in this defendant's Washington state conviction. So at the time of his deportation, there would have been no reason for the immigration judge to even go down this road. Yes. Yeah. Okay. Just in what time you have, I'd like to hear your response on the denial of a request for new counsel. That's the issue that troubles me the most. Okay. Well, the district court was within its discretion in denying the request for new counsel in this case. This court has made it clear that a defendant is not entitled to a new appointed attorney simply because he has a lack of trust or there's been some breakdown in communication. It has to be a complete breakdown in communication such that there's an irreconcilable conflict between the defendant and the attorney. And what do we make of the statement at that first hearing before Judge Burns where his then current lawyers said that we think we've reached that point where we don't think we can adequately represent him given the lack of trust and the lack of communication we currently have? Well, I think the court at that point properly turned to the defendant himself to explore the issue and asked a number of open-ended questions, repeatedly asking the defendant, tell me what it is that's the problem here? What is the communication issue? And what the defendant kept coming back to in this case was issues he had with his previous attorney in Washington state and then specific discussions about the advice that he was getting from his attorneys about the sentence he was facing. Let's focus on the first part, which is the problems he had with his prior attorney. The problems, as I understand it, is that he had developed a lack of trust for public defenders in general based on his very bad experience in that earlier case, and that's what his lawyer communicated to Judge Burns. Yes. So Judge Burns, as I read the transcript, basically tried to talk him out of switching to a panel attorney because the panel attorneys wouldn't be nearly as competent and experienced in this kind of case as the lawyers he had from the federal defenders, and that probably was sound advice, right? But the defendant wasn't persuaded by that, and as we know from developments later in trial, that he never did overcome the lack of trust he had with his current counsel. So I guess what bothers me about this is that Judge Burns seemed to have his intentions were certainly good, and he was trying to give the defendant good advice in terms of this is why you should stick with your current lawyers, but that's not really a call for Judge Burns to make, right? If the defendant can't develop a level of trust with his current lawyers such that he would even tell them that he's going to testify, that strikes me as a real problem, and it's not overcome by Judge Burns' attempts to persuade the guy to change his mind. Your Honor, I would agree if all Judge Burns had done is come in and only tried to convince his defendant why he was wrong, but Judge Burns did that, and he also repeatedly inquired of the defendant, tell me the details of what it is that you're having problems with your attorney, tell me what the communications and issues are, for two reasons. One, to see whether there was a complete breakdown of communication, and I think the defendant's responses in this case indicated that there was not, as well as the defendant's interactions in court with his attorney, the court pointed out, appeared to be cordial, appeared to be communicating even in court, and second, even if the defendant had a complete breakdown in communication, the court was asking questions to determine whether the defendant himself was the cause of that breakdown, whether it was his unreasonable intent. But that's what I mean. This wasn't a situation where the defendant was trying to game the system and delay the trial. It was a genuine, and his lawyer, again, his lawyer I think is the best advocate he had, because he wasn't always fully coherent. His lawyer said we are not at a point where we can communicate with one another such that we can adequately represent him, and she assured the court that this has nothing to do with delay. He's not trying to put off the trial. This is a genuine deep-seated mistrust he has for public defenders. We've done our best, but we can't change the fact that we're public defenders, and obviously if you were to appoint a panel attorney, that whole issue goes away. And for whatever reason, Judge Burns could not successfully persuade this guy that he should get over his distrust of public defenders, and we know that that actually caused – it's not like he was making it up, right, given what happened at trial. Well, I'm not sure that we know that his lack of trust caused an effect on the trial or caused him to testify. Have you ever seen a case in which the defendant just pops up at trial and announces, I'm going to testify, and his lawyers had no clue that he was going to take the stand, had no opportunity to prepare him for that? I've never heard of a criminal case in which that happened, at least not where there's any semblance of a real relationship between the attorney and the client. That's a major, major breakdown in the relationship. I don't know how we can say that the trial here was fair if the level of distrust and lack of communication was at that level. I mean, I'm sure you've seen many trials. I can't remember a single one where that's happened. I'm not sure. I have not seen that specific instance. But I would just go back to saying that over the course of three separate lengthy hearings, the court inquired directly of the defendant multiple times as to what it was that his problems were with his attorney. And the defendant made it clear that this was not a complete breakdown. It was specific issues that he had with the advice that he was getting from his attorneys and a certain lack of trust that he had in his attorneys. And this court's case law is clear that that lack of trust or a bad relationship with your attorneys in this context, when you've been an appointed counsel, is simply not enough to amount to an irreconcilable conflict. And at the very least, this is an abuse of discretion on behalf of Judge Burns. And certainly, you read the record, a lot of the time Judge Burns appeared to be convincing or attempting to convince his defendant to get over the issues he had and to go forward with the attorneys that he'd been appointed to. But the judge has broad discretion as he's going to trial with this sort of difficult defendant. I guess where I come back, though, is what is the problem with appointing a new lawyer? It's the first request. I definitely understand if it's the second, third, fourth. We have plenty of cases saying the judge has a lot of leeway there. But this is at the very beginning of the case, at the very first hearing, where the guy is appearing before Judge Burns. What's the problem with just giving him another lawyer? I don't understand that. There wouldn't have been a problem, and that probably would have been the easiest thing to do at this point. But I think on abuse of discretion review, we can't say that it was illogical. We can't because there was no good reason not to give him a new lawyer. Again, I get it if it's a week before trial. I get it if it's the third request. But there's no gamesmanship. He's just saying, I have a genuine problem with this lawyer. I can't get over it. Thanks for trying to persuade me. I'm not persuaded. And the lawyer tells him, we don't even think we can adequately represent the guy given this lack of trust. I don't understand why would the judge insist that he stick with this lawyer that's not going to be able to adequately represent him. That makes no sense to me. Counsel, are there any cases, I'm sorry to break in, but are there any cases on simply rejecting all public defenders? Because we can have different views on it, but I agree with Judge Watford that that seems to be at least a major part, if not the sole part. We usually say people are entitled to counsel, but not counsel of their choice. Is there any case one way or the other in what is in effect a negative choice? I refuse to be a point represented by public defenders because I don't trust them generically. I'm not aware of a specific case on that point. All I would say is that that would seem to fall into the line of cases that say a defendant's own sort of manufactured or unreasonable failure to communicate with his attorney is not grounds in this context of appointed counsel. It doesn't have to be manufactured as long as it's unreasonable. Yes.  Right. At some point, Villasenor says, I'm just going to represent myself then. There's brief discussion of his forerunner rights, and the judge punts it to a subsequent hearing, and then it's not raised again. Is that where we are on this? I don't think that Villasenor subsequently requested to represent himself. That's correct. It was sort of at the end of a long discussion about him not getting the attorney that he wanted. He then said, well, I want to represent myself. The court actually put it on calendar for later that afternoon initially and then decided at the defense counsel's request to put it the following Monday, I believe, and then it never went forward. He never renewed that request, or they never got to that hearing. The record's not entirely clear why that was. But essentially, other than that sort of brief request when the court set a second hearing, the defendant never again at any point requested that he represent himself. I'll take that back. There was, I think, one sort of oblique reference to it, again, in the middle of sort of a 20 pages of discussion with the court where he said he was going to do his own legal research and file a motion from the law library. But these were sort of ñ there was never a fully formed request to represent himself, and the court, when there was that initial request, set it for a forerunner hearing, but it never occurred. So it's our position that that was not a request that would have required the court to allow him to represent himself. Okay. Unless the court has any other questions. No, thank you, Mr. Zip. Mr. Fife. Your Honor, just two quick points on the Sixth Amendment issues. As was pointed out, counsel stated in unequivocal terms that we can't constitutionally represent him in the state of our relationship is right now. The judge should have just then ñ that was enough right there for the judge to do something. But what the judge said was, well, then he has to behave himself. So he just simply wasn't open to it. This was not only counsel's statement, but it was confirmed by very concrete, objective evidence. Judge Wofford pointed out the stealth decision to testify, completely unprecedented. But I would also point to the fact that counsel, in good faith, also called for a competency hearing. That is about as clear an indication that, well, if he wasn't mentally incompetent and unable to cooperate, he was still ñ it shows that the level of cooperation was at his rock bottom. But if counsel asks for a competency hearing, that means he gets new counsel? I think that at least can be taken as evidence that, in good faith, counsel believed that the relationship has so broken down that it's either because he's unable to cooperate, but it certainly indicates ñ the predicate is that he is not cooperating whatsoever. And I think that's confirmed by the stealth decision to testify and by the resistance he put up to the jury waiver. I would also point out that in the Feretta case, that was simply undecided. So that's an abuse of discretion right there. This court hasn't decided whether it's abuse of discretion or de novo on review. It's an abuse of discretion because the judge failed to exercise discretion. But also de novo, I think all the facts under the Erskine factors that I cited in my brief are right here, right on the record. He knew what the charge was. He clearly knew the defenses because he was talking about different defenses. He knew what the penalty was because the judge advised him about the penalties. And he knew the dangers of self-representation because that's all that Judge Burns talked to him about, was all the dangers of why he shouldn't change counsel. So on this record, it's clear that every one of the Erskine factors was present. He should have been given his right to represent himself. And the fact that the court said, I'm not going to go through all that right now, all that is simply a regular knowing and intelligent decision, like it was a plea. He doesn't have to show any skills or experience. He simply has to show that this is his knowing and intelligent decision. And that would have taken very little time, but the judge punted it, I think, in the effort to try to derail it. And it was derailed because at the very next hearing where it was supposed to come up was when the competency issue was raised. And then it just fell by the wayside. Okay. Thank you, Your Honor. Thank you. We thank counsel for the argument. V.S. Sen. Boteo is submitted.
judges: Boggs, Bybee, Watford